## THE CLYDE.

## THE NASHOTAH.

## THE W. J. ROEBUCK.

ILLINOIS STONE Co. *v.* THE CLYDE, THE NASHOTAH, and THE W. J. ROEBUCK.[1]

*(District Court, N. D. Illinois.  October 19, 1891.)*

COLLISION—BETWEEN TOWS.

 A steamer, which had just taken on a cargo at a dock in the Chicago river, swung out into the stream for the purpose of starting on her voyage, whereupon two tugs, each towing a canal-boat, approached from opposite directions.  As soon as she perceived the tugs, the steamer stopped, and swung her bow as far as she could towards the shore, there being another vessel between her and the shore.  The two tugs passed each other between the steamer and the opposite shore, and their two tows collided.  *Held,* that the steamer was not in fault, but that both tugs were to blame for attempting to cross at that point, and that each tug should bear half the loss.

In Admiralty.  Libel by the Illinois Stone Company against the propeller Clyde, the canal propeller Nashotah, and the canal-boat W. J. Roebuck, for damages caused by a collision.

*Charles E. Kremer,* for libelant.

*John C. Richberg,* for respondents.

BLODGETT, District Judge.  The libelant in this case seeks to recover damages sustained by him, as owner of the canal-boat Hogan, by reason of a collision which occurred between the Hogan and the canal-boat Roebuck, on the waters of the Chicago river, on the evening of the 31st of July, 1889, whereby the Hogan was sunk.  The proof in the case shows that just before the collision the steam-propeller Clyde, having taken on a cargo of over 60,000 bushels of wheat at what is known as "Keith's Elevator," a short distance above the Halsted-Street bridge, and on the east side of the south branch of the Chicago river, cast off her forward lines, and started her wheel for the purpose of swinging out into the river in order to start on her voyage; that the schooner Helen Williams lay directly below the berth at the dock occupied by the Clyde.  The Clyde's bow swung out into the stream past the Williams, and probably some distance into the river, when the whistle of the canal-tug Nashotah was sounded for the draw of the Halsted-Street bridge, the Nashotah coming up the river with the Roebuck in tow, both lumber laden.  The master of the Clyde at once took measures to swing the bow of his boat back towards the dock, but was unable to swing her entirely back against the dock, by reason of her having lapped partly against the

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

Williams. At this time, the canal-tug Loomis was coming down the river with two canal-boats in tow, one of which was the Hogan, and had sounded a single blast of her whistle for the Nashotah, to indicate that she (the Loomis) wished to take her tow through the west draw of Halsted-Street bridge, instead of the east draw, which was the starboard draw, and the one she would naturally take, and the Nashotah had responded in assent to this proposition, so that the arrangement had been made between the Nashotah and the Loomis that the Nashotah, coming up stream, should pass through the east draw, and the Loomis, going down, should pass with her tow through the west draw of the bridge. The Clyde being swung out into the stream somewhat, made it necessary that both the Nashotah and the Roebuck, her tow, should swing out into the stream a little for the purpose of passing the Clyde's bow, and in doing so, the Nashotah passed safely around the bow of the Clyde, and resumed her course nearly parallel with the Clyde up the river; the Roebuck, following upon a line of about 150 feet in length, also swung out into the river around the Clyde's bow, and, just as she had passed the Clyde's bow, collided with the Hogan, which was coming down the river in tow of the Loomis, breaking in her tow, and causing her to sink.

I do not see how any blame can be attached to the Clyde for this accident. She had only done what she had a right to do,—swung out into the stream for the purpose of starting on her voyage. As soon as she was apprised of the approach of the Nashotah and her tow, she not only stopped, but swung her bow back as far as she could towards the shore, against the Williams, and remained there, giving room for the Nashotah and her tow to pass up the river. I do not think that the Clyde was bound to retreat, so to speak, back into her berth, from which she had started. She had the same right to occupy the water of the river that the Nashotah and her tow and the Loomis and her tow had. Each of them must exercise their respective rights so as, if possible, not to interfere with the other. I think the fault in this case, by which the Hogan was sunk, is attributable solely to the attempt on the part of the Loomis and the Nashotah to simultaneously take their tows past the bow of the Clyde, under the circumstances. The Nashotah could have more easily stopped, perhaps, as she was coming up the river, and had whatever current there was against her, and the proof shows there was some current; but I think it was negligence in both tugs to attempt to pass each other through so narrow a space as was left by the Clyde at that point. One should have waited for the other. Possibly, under the circumstances, it was the duty of the Nashotah to have waited, but certainly one should have waited for the other; and it is clear that skillful men, watching the movements of the two boats, must have seen that there was danger of a collision between these two tows at this point, and hence there should have been more care used than was. I am therefore of opinion that both the Loomis and the Nashotah were at fault, and the damages sustained should be divided. As there is no proof that the

Roebuck sustained any injury, and as no cross-libel has been filed by her owners, a decree will be entered awarding to libelant one-half the damages sustained by the Hogan.